**United States District Court**
**Southern District of New York**

─────────────────────────────────

**In re TELIGENT, INC., et al.,**
                              **Debtors.**

─────────────────────────────────

UNSECURED CLAIMS ESTATE REPRESENTATIVE          <u>OPINION AND ORDER</u>
**OF TELIGENT, INC., et al.,**
                                                 **04 Civ. 2193 (JGK)**
                              Appellant,

          – against –

CIGNA HEALTHCARE, INC.,
                              Appellee.

─────────────────────────────────

JOHN G. KOELTL, District Judge:

     This is an appeal pursuant to 28 U.S.C. § 158(a)(1) from an

order of the Bankruptcy Court denying a motion by Savage &

Associates, P.C., to vacate partially an order (the "Assumption

Order"), which authorized the assumption of certain executory

contracts, including a health insurance policy executed between

Cigna Healthcare, Inc. ("Cigna"), and the debtors (collectively,

"Teligent").  <u>See</u> <u>In re Teligent, Inc.</u>, 306 B.R. 752 (Bankr.

S.D.N.Y. 2004).  Pursuant to Federal Rule of Civil Procedure

60(b)(6), which is incorporated into Federal Rule of Bankruptcy

Procedure 9024, Savage & Associate, P.C., as the Unsecured

Claims Estate Representative (the "Representative") filed its

Motion to Partially Vacate the Order Authorizing Assumption of

Cigna's Healthcare's Policy (the "Motion to Vacate"), which was

1

an attempt to deprive Cigna of its principal defense to a preference action commenced by the Representative. Chief Bankruptcy Judge Stuart M. Bernstein denied the Motion to Vacate in a Memorandum Decision dated January 8, 2004 and by subsequent Order dated February 2, 2004. Id. (See also Representative's Record, Exs. H; I.[1]) For the reasons explained below, the Court affirms the Bankruptcy Court's decision to deny the Representative's Motion to Vacate the portion of the Assumption Order dealing with the insurance policy between Cigna and Teligent.[2]

## I.

The following facts, which are not disputed by the parties, are, unless otherwise noted, taken from Chief Bankruptcy Judge Bernstein's January 8, 2004 Memorandum Decision. See In re Teligent, Inc., 306 B.R. 752.

Teligent filed its petition for relief under Chapter 11 of the United States Bankruptcy Code on May 21, 2001. Both before and after the petition date, Teligent was a party to a contract with Cigna that provided health and dental insurance benefits to Teligent's employees (the "Policy"). During the Chapter 11

---

[1]References to "Ex. __" are to exhibits included as part of the record on appeal as prepared by the appellant Representative, the appellee Reorganized Teligent, and the appellee Cigna, as noted.
[2]The "Motion to Vacate" referred to throughout this Order sought to vacate only the portion of the Assumption Order concerning the insurance policy between Cigna and Teligent.

2

case, Teligent sought unsuccessfully to obtain alternate health insurance coverage from other insurance companies. Accordingly, Teligent moved on or about September 5, 2002, to assume the Policy along with several hundred other executory contracts and unexpired leases (the "Assumption Motion").[3]

Teligent's Plan of reorganization was confirmed on September 6, 2002, while the Assumption Motion was pending. The Plan substantively consolidated the affiliated debtors into a single entity ("Reorganized Teligent"). Upon confirmation, all of the property of the estate revested in Reorganized Teligent with the exception of the "Chapter 5 Causes of Action" and the "Unsecured Claim Fund," which were transferred to a newly formed legal entity, the "Unsecured Claim Estate Representative."[4] The Representative was "[t]hat person appointed by the Creditors Committee to be the estate representative pursuant to section 1123(b)(3) of the Bankruptcy Code to pursue the Chapter 5 Causes of Action and determine the validity, priority and amount of the

---

[3]Subsequent references to the Assumption Motion (see Reorganized Teligent Record, Ex. C; Cigna Record, Ex. 4) and the Assumption Order (see Reorganized Teligent Record, Exs. D, E, F) are limited to those portions concerning the Policy between Teligent and Cigna, unless otherwise noted.
[4]The "Unsecured Claim Estate Representative" is used interchangeably with the title of "Representative," which includes both Savage & Associates, P.C. and Borenstein, Bloom & Savage, P.C. The term "Representative" refers to whichever one was serving in the capacity as Representative at the time. See Teligent, 306 B.R. at 756 n.3.

General Unsecured Claims." (Plan, Art. I, ¶ B.69.) The "Chapter 5 Causes of Action" included:

> [a]ny and all of any Debtors' rights, claims, or causes under sections 542, 544, 545, 547, 548, 549, 550 and 552(b) of the Bankruptcy Code, whether known or unknown, in law, equity or otherwise, except to the extent waived or retained by the Debtors during the Chapter 11 Cases pursuant to the Plan.

(Plan, Art. I, ¶ B.15.)

The "Unsecured Claim Fund" meant the $300,000.00 that was transferred to the Representative as seed money to finance the necessary investigation and litigation. (See Plan, Art. I, ¶ B.70.) The Plan became effective on September 12, 2002, the same day that Bloom, Borenstein & Savage, P.C., a predecessor firm to Savage & Associates, P.C., was selected as the Representative.

On October 18, 2002, Chief Bankruptcy Judge Bernstein granted the part of the Assumption Motion that included the Policy, without opposition, and signed an order the same day authorizing the assumption of the Policy along with twenty-nine other executory contracts based upon the Bankruptcy Court's finding that the requested relief was "in the best interests of the Debtors, their estates, their creditors and other parties in interest." In re Teligent, Inc., 306 B.R. at 756 (citation and internal quotation marks omitted)). Upon assumption, the Policy became an asset of Reorganized Teligent. No one, including the

Representative, appealed from the Assumption Order.  If the
Policy had not been assumed, it would have been deemed rejected
under the Plan.  (See Plan, Art. VII, ¶ A.)

On May 13, 2003, the Representative filed a complaint
against Cigna and Cigna Behavioral Healthcare to recover
over $9 million in alleged pre-petition preferences and
over $1 million in post-petition transfers.  An amended
complaint, filed by the Representative on August 1, 2003,
dropped Cigna Behavioral Healthcare, and Cigna subsequently
moved to dismiss the amended complaint, invoking the well-
settled doctrine that a preference action may not be
maintained for payments made in connection with an assumed
executory contract.  See In re Teligent, Inc., 306 B.R. at
756 (citing Kiwi Int'l Air Lines, Inc., 344 F.3d 311, 318
(3d Cir. 2003); In re Superior Toy & Mfg. Co., Inc., 78
F.3d 1169, 1172 (7th Cir. 1996)).  On May 27, 2004, the
Bankruptcy Court granted Cigna's Motion to Dismiss.[5]

In an apparent response to the Motion to Dismiss, pursuant
to Federal Rule of Civil Procedure 60(b)(6), as incorporated by
Bankruptcy Rule 9024, the Representative filed its Motion to

---

[5]The Representative has appealed the May 27, 2004 bench decision
and subsequent Order dated June 10, 2004 by the Bankruptcy Court
granting summary judgment to Cigna and dismissing the
Representative's amended complaint.  That appeal is the subject
of a separate Order by this Court.

Vacate that portion of the Assumption Order relating to the Policy.[6]  In the Memorandum Decision dated January 8, 2004, now on appeal to this Court, Chief Judge Bernstein denied the Representative's Motion to Vacate, finding that the Representative had failed to demonstrate that the Representative was entitled to relief under Rule 60(b)(6).  See In re Teligent, Inc., 306 B.R. at 758, 760-61.  The Bankruptcy Court also concluded that the Representative was estopped from challenging the Assumption Order because of Teligent's decision, as the Representative's predecessor-in-interest, to assume the Policy. See id. at 759-60.  In addition, the Bankruptcy Court noted but did not decide Cigna's arguments that the Representative's Motion

---

[6]Federal Rule of Civil Procedure 60(b) provides:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Fed. R. Civ. P. 60(b).

to Vacate should be denied under the doctrine of equitable mootness and that the Representative lacked standing to bring the Motion to Vacate.  See id. at 757-58.

At the request of the Bankruptcy Court, Cigna submitted a supplemental affidavit and the Representative submitted a corresponding supplemental reply brief.  After considering these supplemental papers, together with the facts and argument presented at a hearing in November 2003, the Bankruptcy Court denied the Representative's Motion to Vacate in an Order dated February 2, 2004.  (See Representative's Record Ex. H.)

The Representative filed a notice of appeal dated February 11, 2004, seeking review of the Bankruptcy Court's January 8, 2004 Memorandum Decision and its Order dated February 2, 2004.

## II.

A district court generally reviews the findings of fact of a bankruptcy court under a "clearly erroneous" standard, see Fed. R. Bankr. P. 8013, and conclusions of law are reviewed de novo. With respect to mixed questions of law and fact, the Court reviews findings of fact under the clearly erroneous standard and the conclusions of law de novo.  See, e.g., Nat'l Union Fire Co. v. Bonnanzio (In re Bonnanzio), 91 F.3d 296, 300 (2d Cir. 1996); Shugrue v. Air Line Pilots Assoc., Int'l (In re Ionosphere Clubs, Inc.), 922 F.2d 984, 988 (2d Cir. 1990); Nova

v. Premier Operations (In re Premier Operations), 294 B.R. 213,
217 (S.D.N.Y. 2003).  Moreover, with respect to the denial of a
Rule 60 motion, the decision by the Bankruptcy Court is reversed
only for an abuse of discretion.  See, e.g., Gey Assocs. Gen.
P'ship v. 310 Assocs., L.P. (In re 310 Assocs.), No. 02 Civ.
0710, 2002 WL 31426344, at *2 (S.D.N.Y. Oct. 29, 2002), aff'd
346 F.3d 31, 34 (2d Cir. 2003).  As the Court of Appeals for the
Second Circuit has explained, "A bankruptcy court abuses its
discretion when it arrives at a decision that (i) rests "on an
error of law (such as application of the wrong legal principle)
or a clearly erroneous factual finding," or (ii) "a decision
that, though not necessarily the product of legal error or
clearly erroneous factual finding[,] cannot be located within
the range of permissible decisions." Schwartz v. Aquatic Dev.
Group, Inc. (In re Aquatic Dev. Group, Inc.), 352 F.3d 671, 678
(2d Cir. 2003)(citation and internal quotation marks omitted).
The appeal from the denial of a Rule 60 motion "brings up only
the denial of the motion and not the merits of the underlying
judgment itself." Paddington Partners v. Bouchard, 34 F.3d
1132, 1147 (2d Cir. 1994)(citation and internal quotation marks
omitted).  Accordingly, the Court reviews the denial of the
Representative's Rule 60(b) motion for any abuse of discretion;

the Bankruptcy Court's entry of the Assumption Order is not
under review.

I.

Before turning to the merits of the Bankruptcy Court's
denial of the Representative's Motion to Vacate the Assumption
Order pursuant to Federal Rule of Civil Procedure 60(b), the
Court first reviews the Representative's standing to bring the
Motion as well as the Bankruptcy Court's finding that the
Representative was estopped from vacating the Assumption Order,
which was entered by the Bankruptcy Court at Teligent's request.

A.

Cigna argues persuasively that the Representative had no
standing to bring the Motion to Vacate because the
Representative was not authorized to seek reversal of the
Assumption Order under the express terms of the Plan.[7]  Rather,
consistent with Section 1123(b)(3) of the Bankruptcy Code, the
Plan only authorized the Representative ". . . to pursue the
Chapter 5 Causes of Action and determine the validity, priority,
and amount of the General Unsecured Claims . . . ." (see Plan,
Art. I, ¶ B.69), and the Plan expressly limited the "rights,

---

[7]Cigna raises the issue of standing in its brief on appeal, and
Reorganized Teligent notes that it generally supports and adopts
Cigna's arguments.  Reorganized Teligent's brief primarily
addresses issues raised under Federal Rule of Civil Procedure
60(b).

claims, or causes" included in the Chapter 5 Causes of Action by including the limitation "except to the extent waived or retained by the Debtors during the Chapter 11 Cases pursuant to the Plan." (See Plan, Art. I, ¶ B.15.) Cigna thus has a strong argument that the plain terms of the Plan did not authorize the Representative to bring motions to challenge the Assumption Order because the Assumption Order involved contracts that were purposely retained by Reorganized Teligent. Although the Bankruptcy Judge did not decide the issue of the Representative's standing to prosecute the Motion to Vacate, it noted that Cigna's argument that the Representative lacked standing was "compelling." In re Teligent, Inc., 306 B.R. at 757. The Assumption Order was entered post-confirmation during the "Chapter 11 Cases" and "pursuant to the Plan." See In re Teligent, Inc., 306 B.R. at 757 n.6. The Bankruptcy Court explained that, "In fact, the Plan carves out the contracts which were the subject of the Assumption Motion from the automatic rejection that would have otherwise ensued." Id.

Moreover, the Bankruptcy Court observed that it is unlikely that the Plan proponents intended to allow the Representative to challenge the Assumption Order where such a challenge would adversely impact the business of Reorganized Teligent. See id. at 757. Here, the Bankruptcy Court explained that Teligent was

unsuccessful in efforts to obtain health insurance from a provider other than Cigna during its reorganization, and that vacating the Assumption Order would leave Reorganized Teligent's employees without medical insurance. See id. The Bankruptcy Court added that despite the statutory powers of trustees and estate representatives in general, and Section 544(b) of the Bankruptcy Code in particular,[8] the Representative's authority is ultimately derived from and limited by the Plan. See id. (citing Mancuso v. Sullivan (In re Sullivan), 153 B.R. 751 (Bank. N.D. Tex. 1993)(post-confirmation trustee lacked standing to challenge individual chapter 11 debtor's discharge because plan did not grant authority to do so)). In addition, the Representative cannot point to any provision in the Plan that grants the Representative standing to bring a motion to vacate an order of the Bankruptcy Court: "All that the Plan bestowed was the authority to bring avoidance claims that had not been released. It did not grant the Representative the express right to challenge any order that affected her ability to prosecute an

_____

[8]Section 544(b) of the Bankruptcy Code provides, in pertinent part:

> Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

11 U.S.C. § 544(b)(1).

avoidance claim, and there is little reason to imply such a right either." In re Teligent, Inc., 306 B.R. at 758.

The Representative's reliance on In re Maxwell Newspapers, Inc., 170 B.R. 549 (S.D.N.Y. 1994) to establish standing is misplaced. That case is silent on the issue of standing and does not establish that the Representative had standing to bring the Motion to Vacate the Assumption Order in this case.

In any event, even if the Representative had standing to bring the Motion to Vacate the Assumption Order, the Representative was estopped from moving to vacate the Assumption Order, which was prepared by and prosecuted by Teligent, the Representative's predecessor-in-interest. Teligent's knowledge and conduct in prosecuting the Assumption Motion is properly imputed to the Representative, and the Representative cannot vacate an order that was entered at the request of the Representative's predecessor-in-interest. See, e.g., In re XO Communications, Inc., 301 B.R. 782, 798, 800 (Bankr. S.D.N.Y. 2003)(imputing Teligent's knowledge and conduct to Representative for purposes of evaluating excusable neglect), aff'd on other grounds, No. 04 Civ. 01489, 2004 WL 2414815 (S.D.N.Y. Jun. 14, 2004). The Representative cannot escape the consequences of Teligent's business judgment and conduct in assuming the Policy. See, e.g., Nostas Assocs. v. Costich (In

12

re Klein Sleep Prods., Inc.), 78 F.3d 18, 25 (2d Cir.
1996)(rejecting trustee's post-assumption argument that debtor
did not benefit from assumption of particular lease; "the
bankruptcy court's earlier decision to let [debtor] assume the
unexpired lease –– a decision that was not appealed –– precluded
a subsequent finding that assuming the lease did not benefit
[debtor].”); Feldman v. Trans-East Air, Inc., 497 F.2d 352 (2d
Cir. 1974); Armstrong v. Norwest Bank, Minneapolis, N.A., 964
F.2d 797, 801 (8th Cir. 1992)(“Creditors must be able to deal
freely with debtors-in-possession . . . without fear of
retribution or reversal at the hands of a later appointed
trustee.”).

    The Bankruptcy Court correctly found Trans-East Air, Inc.
to be “directly on point.”  In re Teligent, Inc., 306 B.R. at
759.  In that case, the Court of Appeals for the Second Circuit
affirmed both the bankruptcy and district courts' denials of a
trustee's motion to vacate a disaffirmance order, which dealt
with three aircraft leases.  In that case, the order of
disaffirmance was binding on the trustee, even though the
trustee was not a party to the disaffirmance proceeding.  Trans-
East Air, 497 F.2d at 355-56.  Moreover, the debtor's actions in
seeking and obtaining the disaffirmance order were imputed to
the trustee for the purposes of estoppel; the trustee was

equitably estopped from vacating the disaffirmance order because the lessors of the aircraft had reasonably relied on the rejection of the three aircraft leases and had spent a considerable amount of time and money to release the planes on favorable terms.  See id.

The Representative attempts to distinguish Trans-East Air without success.  The record reveals that no one objected to the Assumption Motion and that the Representative failed to appeal the Assumption Order.  Rather than appeal the Assumption Order, "Cigna, Reorganized Teligent and its employees reasonably relied on the Assumption Order, and changed their positions."  In re Teligent, Inc., 306 B.R. at 760.  As the Bankruptcy Court noted in its January 8, 2004 Memorandum Decision, Cigna relied on Teligent's assumption of the Policy, and "[b]etween September 1, 2002 and October 31, 2003, Cigna processed approximately 5,811 claims arising under the [Policy], issuing 4,230 checks in the aggregate amount of $1,016,926.00."  Id. at 760 (citation omitted).  Moreover, Reorganized Teligent paid premiums, and 20% of these premiums came from deductions from employees' wages. Id. (citation omitted).

Much like the trustee in Trans-East Air, who attempted to vacate the disaffirmance of aircraft leases after the aircraft had been returned and released, see Trans-East Air, 497 F.2d at

14

355, it would be "highly inequitable" if the Representative in this case were allowed to vacate the Assumption Order on which Cigna, Reorganized Teligent, and its employees relied.  See In re Teligent, Inc., 306 B.R. at 760.  In sum, the Representative's attempt to enhance a potential preference claim does not outweigh the rights that have vested under the Assumption Order.  The Bankruptcy Court correctly found that the Representative was equitably estopped from vacating the Assumption Order.  See id.

## B.

The Representative has also failed to demonstrate that the Representative is entitled to relief under Federal Rule of Civil Procedure 60(b)(6).  A motion based on Rule 60(b)(6) must be brought "within a reasonable time," Fed. R. Civ. P. 60(b); relief is only appropriate under clause (6) "in cases presenting extraordinary circumstances," Rodriguez v. Mitchell, 252 F.3d 191, 201 (2d Cir. 2001)(citation omitted), or where the judgment may work an "extreme and undue hardship." Montco, Inc. v. Barr (In re Emergency Beacon Corp.), 666 F.2d 754, 759 (2d Cir. 1981).  In determining whether a movant has met its burden under Rule 60(b)(6), relevant considerations include: (1) the desire to resolve disputes on their merits; (2) the existence of a meritorious claim or defense; and (3) the absence of unfair

prejudice to the opposing party if the requested relief is
granted.  See Rupert v. Krautheimer, 210 B.R. 37, 44 (Bankr.
S.D.N.Y. 1997).  Moreover, as noted by the Bankruptcy Court, a
motion under Rule 60(b)(6) is not a substitute for a timely
appeal of the Assumption Motion.  In re Teligent, Inc., 306 B.R.
at 761; see also Nemaizer v. Baker, 793 F.2d 58, 61 (2d Cir.
1986) (citing United States v. O'Neil, 709 F.2d 361, 372 (5th
Cir. 1983); Rinieri v. News Syndicate Co., 385 F.2d 818, 822 (2d
Cir. 1967)); see also Eutectic Corp v. Metco, Inc., 597 F.2d 32,
34 (2d Cir. 1979)(per curiam)("The limitation on the use of Rule
60 motions as a substitute for appeal is especially true of
motions under Rule 60(b)(6).").

     The Representative has not demonstrated that any
"extraordinary circumstance" or "extreme and undue hardship"
exists that would justify vacatur of the Assumption Order.  The
Representative failed to appeal from the Assumption Order, even
though it was entered more than one month after the
Representative's appointment.  See In re Teligent, Inc., 306
B.R. at 761.  While the Representative claims she lacked notice
of the Assumption Order, as noted above, Teligent's knowledge of
the Assumption Motion and subsequent Order is properly imputed
to the Representative.  See In re XO Communications, Inc., 301
B.R. 782.  The Representative points to the possibility that, if

16

the Assumption Order were vacated, the unsecured creditors may

recover more through the successful pursuit of a preference

action against Cigna.  However, this possibility is not a basis

for relief under Rule 60(b)(6).  See Key Mechanical Inc. v. BDC

56 LLC, No. 01 Civ. 10173, 2002 WL 467664, at *4 (S.D.N.Y. Mar.

26, 2002)(finding that the possibility of greater distribution

to creditors does not rise to the level of exceptional

circumstances or extreme hardship for purposes of Rule

60(b)(6)), aff'd on other grounds, 330 F.3d 111 (2d Cir. 2003).

As the Bankruptcy Court explained, the Plan in this case did not

obligate Teligent to transfer anything of value to the

Representative:

> Whatever Teligent gave to the Representative was a gift
> from its secured bank lenders who had a lien on all of the
> assets . . . It was not obligated to maximize the value of
> that transfer [of the chapter 5 avoidance claims for the
> benefit of the unsecured creditors] any more than it was
> obligated to make the transfer in the first instance
> (citing In re Teligent, Inc., 282 B.R. 765, 768 (Bankr.
> S.D.N.Y. 2002)).

In re Teligent, Inc., 306 B.R. at 763.

In an attempt to find either "extraordinary circumstances"

or "undue hardship," the Representative points to cases that are

not on point and involve motions to vacate that were granted

pursuant to Federal Rule of Civil Procedure 60(b)(3) rather than

Rule 60(b)(6), including In re Maxwell Newspapers, Inc. 170 B.R.

at 550, and In re MUMA Servs., Inc., 279 B.R. 478 (Bankr. D.

Del. 2002). The situation in this case is not comparable to either case. Rule 60(b)(3) involves fraud, misrepresentation, or other misconduct of an adverse party. As the Bankruptcy Court noted in its January 8, 2004 Memorandum Decision, Rule 60(b)(3) is not the section of Rule 60 at issue in this case and there is no evidence of fraud, misrepresentation, or other misconduct. See In re Teligent, Inc., 306 B.R. at 762-63 ("The grounds for relief under the six subparagraphs of Rule 60(b) are mutually exclusive.")(citations omitted).

Moreover, In re Maxwell Newspapers, Inc., on which the Representative primarily relies, specifically notes that the Bankruptcy Court should not vacate an order where, as is the case here, intervening rights have vested in reliance on that order. See In re Maxwell Newspapers, Inc. 170 B.R. at 550 ("bankruptcy courts, as courts of equity, have the power to . . . vacate a previous order so long as no intervening rights have become vested in reliance on such order." (citation omitted)); see also In re Emergency Beacon Corp., 666 F.2d at 760. In this case, the Bankruptcy Court appropriately found that vested rights had intervened following the Assumption Order. Pursuant to the Policy, Cigna provided services to Reorganized Teligent and its employees for over two years in reliance on the Assumption Order. Retroactive rejection of the

Policy would likely expose Reorganized Teligent to liability and may leave Teligent's employees with unanticipated costs arising out of past medical services that were not actually covered by insurance.  See In re Teligent, Inc., 306 B.R. at 762.

Given the reliance by Teligent's employees and others on the Assumption Order, the Bankruptcy Court's denial of the Representative's Motion to Vacate is supported by the inherent limitations on a Rule 60(b) motion that should be granted only when it is necessary to "override the finality of judgments in the interest of justice."  See Andrulonis v. United States, 26 F.3d 1224, 1235 (2d Cir. 1994); see also Nemaizer, 793 F.2d at 61 (noting that Rule 60(b) "should be broadly construed to do substantial justice, yet final judgments should not be lightly reopened.")(citations omitted).  The Representative has failed to demonstrate that the Bankruptcy Court's decision not to disturb the finality of the Assumption Order and the vested intervening rights of the parties was an abuse of discretion.[9]

IV.

The Representative contends that the debtor made payments on account of a different insurance contract than

---

[9]It is unnecessary to reach the appellees' argument that the Bankruptcy Court's decision should be affirmed on the grounds of equitable mootness, an argument that the Bankruptcy Court did not reach.

the Policy that was assumed. This argument would have mooted the defense of the Assumption Order. The argument was made for the first time in the Representative's reply brief and the Bankruptcy Court declined to consider the argument. In re Teligent, Inc., 306 B.R. at 757 n.5. The Bankruptcy Court had the discretion not to consider an argument raised for the first time in the reply papers and it was not an abuse of discretion not to consider the argument. See Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999); Keefe v. Shalala, 71 F.3d 1060, 1066 n.2 (2d Cir. 1995).

Moreover, the failure to consider the agreement is moot. The Representative made the argument that there was more than one contract in response to the motion to dismiss. The Bankruptcy Court eventually granted the motion to dismiss, finding that there was only one Policy and that Policy was assumed. That decision is the subject of a separate appeal and the issue is fully argued on that appeal. Thus, the Representative was not prejudiced by the Bankruptcy Court's decision not to consider the argument that was made for the first time in the reply brief on the Motion to Vacate the Assumption Order.

CONCLUSION

For the reasons explained above, the Bankruptcy Court's February 2, 2004 Order is **affirmed**.

**SO ORDERED.**

**Dated: New York, New York**
**May/2 , 2005**

John G. Koeltl
United States District Judge